**Kamran REZAPOUR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–89–073–CR.**

Court of Appeals of Texas, Texarkana.

April 10, 1990.

Michael B. Charlton, Houston, for appellant.

John B. Holmes, Dist. Atty., Houston, for appellee.

GRANT, Justice.

Kamran Rezapour appeals from his conviction for the offense of illegal investment. Upon finding Rezapour guilty, the jury assessed punishment at thirty years confinement and an $80,000 fine.

On appeal, Rezapour contends that the evidence is insufficient to support the verdict and that the charge delivered to the jury was improper.

Rezapour and his co-defendant, Kevin Oglesby, attempted to purchase cocaine from a Federal Drug Enforcement Agency (DEA) agent and a Houston police officer. Rezapour had been acquainted with one of these undercover officers for some time, and he introduced Oglesby to the DEA agent on November 30. At that meeting, while discussing the possibility of purchasing chemicals from the officers with which to manufacture lysergic acid diethylamide (LSD) and methamphetamine, Rezapour asked the agent if the agent could get them some cocaine. Oglesby told the agent that he would be willing to pay about $35,000 for 1.6 kilograms of cocaine. No sale was completed at that time. At a second meeting on December 7, after negotiations, the officers agreed to sell two kilograms of cocaine to Oglesby and Rezapour for $32,-000.

The next day, Oglesby and Rezapour met with the officers in Oglesby's hotel room to make the exchange. The officers examined the cash, which was in a duffle bag and which had been supplied by Oglesby. Rezapour then carried the money from the room to a car and drove Oglesby to the officers' car in the hotel parking lot. Oglesby left the money in the car with Rezapour while he went to the officers' car and examined the cocaine.

The participants had agreed that after the cocaine was approved, they would move their cars to the side of the hotel to make the actual exchange. After Oglesby approved the quality of the cocaine, one officer got out to place the cocaine in the trunk of his undercover vehicle. That raising of the trunk lid was the signal for additional officers, who then came to the car and arrested both Oglesby and Rezapour. The arrest thus occurred before the money or the cocaine could actually change hands. The duffle bag containing $32,000 was taken from Rezapour at the time of the arrest.

Rezapour first contends that the evidence is insufficient to support his conviction in that there is no proof that the money ever actually left the control of the buyers and there was no completed transaction as alleged in the indictment.

 The standard of review for the sufficiency of the evidence is whether,

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989). The essential elements are whether the accused (1) knowingly or intentionally (2) finances or invests funds that the person knows or believes are (3) intended to further the commission of the offense of unlawfully manufacturing, delivering or possessing with intent to manufacture or deliver cocaine. Tex. Health & Safety Code Ann. § 481.126 (Vernon 1990) (previously found at Tex.Rev.Civ. Stat.Ann. art. 4476–15, § 4.052).

■ Rezapour argues that he was indicted for a completed investment but that the State only presented evidence of intent or attempt. He maintains that the offense could not have been completed until the actual transfer of the funds. The indictment alleges that Kamran Rezapour did unlawfully "intentionally and knowingly finance and invest funds the Defendant knows and believes are intended to further the commission of unlawful possession with intent to deliver a controlled substance, namely cocaine, having an aggregate weight, including any adulterants and dilutants, of at least twenty-eight grams."

Although it was Oglesby who provided the money for the transaction, Rezapour will be equally responsible under the law of parties. The terms *finance* and *invest* are not defined by the Code. Accordingly, we must apply the rules of grammar and common usage to determine the meaning of the statute. Tex.Gov't Code Ann. § 311.011 (Vernon 1988). *Finance* is defined as "to raise or provide funds or capital for" or "to furnish with necessary funds." *Invest* means "to commit money in order to earn a financial return." Webster's Ninth New Collegiate Dictionary 463, 636 (1985). Although the funds had not changed hands, the money had been raised and committed by the agreement with the undercover officer for the intended purpose of gaining unlawful possession of the cocaine. It is not necessary that the cocaine actually be received as long as the defendant believes

that the funds will further the delivery of the controlled substance. *Beck v. State*, 741 S.W.2d 516, 519 (Tex.App.—Corpus Christi 1987, pet. ref'd). The proof that Oglesby and Rezapour had the money, and were using it to set up a purchase of cocaine, is neither controverted by the evidence nor disputed in the brief. Rezapour concedes in his brief that the intent to make a drug buy with the money was clearly shown by the evidence. Oglesby and Rezapour showed the money to the officers to convince the officers that Oglesby and Rezapour had the financial ability to purchase the cocaine. This use of the funds was intended to further the commission of the unlawful possession with intent to deliver the cocaine. The evidence is sufficient to support the jury's verdict. We overrule this point of error.

■ Rezapour next contends that the trial court erred in submitting the charge to the jury through alternate instructions on a general form. The charge instructed the jury that it could find Rezapour guilty either as the principal actor or as a party to the crime. Rezapour did not complain of the charge on these grounds. Therefore, our review is governed by *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). The first portion of this review requires us to determine whether there is an error in the jury charge. Rezapour maintains that if the evidence is insufficient on *one* of the theories submitted to the jury, the evidence is insufficient to support the verdict. In support of this theory, Rezapour cites *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 1866, 100 L.Ed.2d 384 (1988).

*Mills* is part of a line of authority originated by *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). These cases involve situations where a jury is instructed that it may convict a defendant upon one of two theories, and one of those theories is based upon an unconstitutional statute. *Zant v. Stephens*, 462 U.S. 862, 880–83, 103 S.Ct. 2733, 2744–46, 77 L.Ed.2d 235, 252–53 (1983). In the present cause, Rezapour was charged with a single crime, and the jury was instructed that it should find him guilty if it found that he

committed the charged offense either individually or as a party. No constitutional defect in the penal statute is apparent, and the theoretical basis of *Mills* is thus inapplicable to the present cause. The trial court did not err in submitting the law of parties to the jury in addition to the question of individual culpability. We overrule this point of error.

We affirm the judgment of the trial court.