**Lonnie Lee JORDAN, Claude Biggins, Jr. and L.C. Richardson, Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 669–90, 670–90 and 671–90.**

Court of Criminal Appeals of Texas, En Banc.

June 19, 1991.

Rehearing Denied Oct. 2, 1991.

Donald J. Driscoll and Edgar Mason, Dallas, for appellant.

John Vance, Dist. Atty., and Donald G. Davis and Robert P. Abbott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A jury convicted appellants, Lonnie Lee Jordan, Claude Biggins, Jr., and L.C. Richardson of illegal investment of funds to further the commission of the offense of possession of cocaine. The trial court assessed punishment against all three appellants (all convictions being enhanced by two prior convictions) at life imprisonment. Each appealed.

The Court of Appeals, interpreting the statute under which each appellant was convicted, held that such required an actual transfer of funds before there could be an illegal investment. *Richardson v. State*, 789 S.W.2d 643, 646–647 (Tex.App.—Dallas 1990). Finding that such transfer of funds did not occur in this case, the Court of Appeals concluded that the evidence was insufficient and ordered that an acquittal be entered. *Id.* at 647.[1] The State sought discretionary review in this Court which we granted to examine the Court of Appeals' holding. We will now reverse.

A review of the facts is necessary for our disposition of this case; viewed in the light most favorable to the jury's verdict, the testimony at trial reveals the following. A confidential informant introduced Dallas Police Officer, Frank Perez, working undercover, to Jordan in early June of 1988. Jordan wanted to buy some cocaine. Officer Perez told Jordan that he would sell him a kilogram of cocaine for $16,000. Subsequently, Perez met with Jordan four or five times during the following two weeks.

On June 21, 1988, Officer Perez met Jordan, and they drove around south Dallas. Jordan directed Perez to a location and told him to stop the car. Perez observed the other appellants, Richardson and Biggins, talking to each other on the sidewalk. Jordan got out of the car and started talking to them. Eventually, Jordan brought Richardson over to the car and introduced him to Perez. Jordan told Perez that he needed some "good" cocaine. Perez responded that he could sell Richardson two kilograms for $32,000. Richardson expressed his interest but told Perez that he would need some time to get the money. Officer Perez did not talk to Biggins at this time; however, while Perez and Richardson discussed the buy, Richardson informed the officer that Biggins was his "partner in the drug business." Perez and Jordan left.

On June 22, 1988, Jordan, in a phone conversation, informed Perez that Richardson was getting the money together for the drug buy and that a deal could be made that day or the next. On the 23rd, Jordan phoned Perez and told him that Richardson and another person were ready to purchase one kilogram of cocaine for $16,000. Perez and Jordan scheduled a meeting for that night to take place in Denny's restaurant parking lot. Officer Perez arrived at the lot around 9:15 p.m.

The three appellants accompanied by a small child soon arrived in a truck and parked near the officer's car. As Perez walked toward the truck, Jordan got out and approached him. Jordan asked Perez if he had the cocaine; Perez responded that he did. Jordan then told Perez that he hoped the transaction worked out because he "had some money invested in [the deal]." Perez and Jordan then walked over to the truck where Richardson, Biggins and the small child had remained. Richardson then asked Perez if he had the cocaine. Perez told Richardson that he did and asked Richardson if he had the money. Biggins then pulled out a brown bag and

---

1. This holding is contrary to the decisions of three other Courts of Appeals. See *Rezapour v. State*, 788 S.W.2d 642, 644 (Tex.App.—Texarkana 1990, pet. granted); *Oglesby v. State*, No. 01-89-00427-CR, 1990 WL 122136 (Tex.App.— Houston [1st Dist.] delivered August 23, 1990, pet. granted) (unpublished opinion); and *Beck v. State*, 741 S.W.2d 516, 519 (Tex.App.—Corpus Christi 1987, pet. ref'd).

handed it to Richardson. Richardson opened the bag for Perez who "stuck [his] hand in it, and pulled out some money ... [and] put [the money] back in [the bag]." Biggins told the officer not to worry—"all of the money was there."

After this, Perez told appellants that he was going to his car to get the cocaine. Richardson kept the bag of money while Perez walked over to his car. Jordan followed Perez. When the two got to the car, Perez opened the trunk and retrieved a purple container. Jordan never touched the container. Soon thereafter, other police officers who had been monitoring the transaction, responded to Officer Perez's pre-arranged arrest signal, moved in, and arrested all three appellants. The brown bag contained $15,620.

Appellants were charged with illegal investment, an offense proscribed by Section 4.052 of former Article 4476–15 (Texas Controlled Substances Act) of the Texas Revised Civil Statutes. At the time of the offense, Section 4.052 provided in pertinent part that:

"(a) A person commits an offense if the person knowingly or intentionally:

"(1) expends funds he knows are derived from the commission of an offense under Section 4.03(c), 4.031(c), 4.04(c), 4.041(c), 4.043(c), 4.043(c), 4.05(c) or 4.051(c) of this Act; or

"(2) finances or invests funds he knows or believes are intended to further the commission of an offense listed in Subdivision (a)(1) of this subsection." Act of May 30, 1983, ch. 425, § 15, 1983 Tex. Gen.Laws 2361, 2391–2382.[2]

Thus, to commit the offense in the case before us, appellants must: (1) knowingly or intentionally finance or invest funds; (2) know or believe the funds are intended to

further the commission of an offense proscribed by sections 4.03(c), 4.031(c), 4.04(c), 4.041(c), 4.043(c), 4.043(c), 4.05(c) or 4.051(c) of the former Texas Controlled Substances Act.[3] Tracking the wording of the statute, the indictment against appellants alleged in part that "on or about June 23, 1988," each:

"did knowingly and intentionally finance and invest funds to wit: $15,620.00 current money of the United States of America, and said defendant knew and believed that said funds were intended to further the commission of the offense of possession of cocaine in an amount by aggregate weight including any adulterants or dilutants of 28 grams or more...." [4]

The Court of Appeals determined that the only issue before it was whether appellants "invested" or "financed" funds to further their possession of the cocaine. *Richardson,* 789 S.W.2d at 645. The Dallas Court, using the common meaning of these terms held that "in the context of section 4.052(a)(2), there must be a *transfer of funds* at some point to satisfy the 'finance' or 'invest' requirement of the statute." *Id.* at 646–647 (emphasis added). The Court stated that Perez had to "exercise control over the money" and since he did nothing more than touch it, the Court of Appeals concluded, "[a]ppellants were one step short of investing and financing funds...." *Id.* at 647. The Court of Appeals opined that appellants' actions "may have constituted an *attempted* illegal investment" but held that the evidence was insufficient to prove a completed offense under Section 4.052. *Id.,* citing *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151,

**2.** The entire Texas Controlled Substance Act has been repealed and the Legislature has adopted a non-substantive recodification of the Act in the new Health and Safety Code. This Act took effect September 1, 1989. Section 4.052 was replaced with Tex.Health & Safety Code Ann. § 481.126 (Vernon 1990).

**3.** Applicable to the case before us is Section 4.04(c) which made it an offense to knowingly

or intentionally possess over twenty-eight grams of certain controlled substances, including cocaine. See Act of May 30, 1983, ch. 425, § 9, 1983 Tex.Gen.Laws 2361, 2379–2380. Now see Tex.Health & Safety Code Ann. § 481.115.

**4.** The conjunctive language in the indictment ("intentionally finance *and* invest funds") was changed to the disjunctive in the court's charge to the jury ("intentionally finance *or* invest funds").

2154, 57 L.Ed.2d 15 (1978). We disagree and find that the Court of Appeals has misconstrued the statute.

In essence, the Court of Appeals held that the offense could not have been completed until an *actual transfer* of funds. However, neither the statute nor the indictment which tracks the statute speaks in terms of transferring funds. The offense requires that there be an intent to "finance" or "invest."

The terms "finance" and "invest" are not defined in the Code; accordingly, we apply the rules of grammar and common usage to determine their meaning. See V.T.C.A., Government Code, Section 311.011 (Vernon 1988). "Finance" is defined as "to raise or provide funds or capital for" or "to furnish with necessary funds." Webster's Ninth New Collegiate Dictionary, p. 463 (1985). "Invest" is defined as "to commit [money] in order to earn a financial return." Id. at 636.

Although the funds in the case before us had not changed hands, the money had been "raised" and "commit[ted]" by agreement for the purpose of gaining possession of cocaine.[5] Indeed, proof that appellants had the money readily available and were using it to set up a purchase of cocaine is amply supported by the evidence and is not disputed in any of the briefs before this Court. The evidence showed that after an agreement to purchase cocaine had been made the three appellants met Perez in a Denny's parking lot to consummate the drug buy. Biggins and Richardson showed the money to the officer and by words and deeds let the officer know that such was for the purchase of the cocaine. It is clear to us that when the record is viewed in the light most favorable to the jury's verdict appellants had "financed and/or invested" $15,620 and intended such to further their possession of the cocaine. The evidence is sufficient to support the jury's verdict. See *Rezapour v. State*, 788 S.W.2d 642, 644 (Tex.App.—Texarkana 1990, pet. granted);

*Beck v. State*, 741 S.W.2d 516, 519 (Tex. App.—Corpus Christi 1987, pet. ref'd).

The Court of Appeals' judgment is reversed and the causes are remanded to it for consideration of appellants' remaining points of error.

MALONEY, J., concurs in the result.

CLINTON, J., agreeing with the statutory construction of the Court of Appeals, respectfully dissents.

BENAVIDES, Judge, concurring.

As Judge McCormick's opinion points out, the applicable portion of of Section 4.052 of former Article 4476.15 (Texas Controlled Substances Act) of the Texas Controlled Substances Act provided in pertinent part that:

"(a) A person commits an offense if the person knowingly or intentionally:

"(1) expends funds he knows are derived from the commission of an offense under Section 4.03(c), 4.031(c), 4.04(c), 4.041(c), 4.043(c), 4.043(c), 4.05(c) or 4.051(c) of this Act; or

"(2) *finances* or *invests* funds he knows or believes are intended to further the commission of an offense listed in Subdivision (a)(1) of this subsection." Act of May 30, 1983, ch. 425, § 15, 1983 Tex. Gen.Laws 2361, 2391–2382.

As can be readily seen an offense under section 4.05(a)(2) can be committed by either financing *or* investing funds under the circumstances described therein.

The applicable portion of the court's charge at the guilt-innocence stage properly allowed the jury to return a guilty verdict upon a finding that the appellants either did "finance or invest funds."

Finance is defined as "to raise funds for or capital for" or "to furnish with necessary funds." Webster's Ninth New Collegiate Dictionary, p. 463 (1985).

I believe that the facts clearly show that the appellants raised funds or furnished the necessary funds knowing and believing

---

**5.** The Court of Appeals correctly observed that it was not necessary for the cocaine to actually be received as long as there was evidence that appellants believed that funds would *"further the possession"* of the controlled substance.

that the funds were intended to further the commission of the offense of possession of cocaine as set out in the indictment. Clearly no transfer to Perez was necessary to show that appellants raised the funds or provided the funds. Accordingly the court of appeals erred in holding that a transfer to Perez was necessary in order to effectuate an illegal investment under Section 4.05(c)(2). Since the evidence clearly shows that the appellants did finance funds, the jury was authorized to return its verdict, irrespective of whether or not an actual transfer to Perez would have been necessary to prove an illegal investment had the indictment and charge merely referred to an investment rather than a financing or investment.

For the foregoing reasons I concur in the decision to reverse the judgments of the court of appeals and to remand the causes for consideration of appellants' remaining points of error.

MILLER, J., joins.